UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| TENPEARLS, LLC | § |
| | § |
| v. | § CIVIL NO. 4:22-CV-550-SDJ |
| | § |
| MEDULLA INTERNATIONAL, LLC | § |
| d/b/a TASTEBUDDY, LLC | § |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff TenPearls, LLC's Motion for Rendition of Default Judgment, (Dkt. #25), Motion for Entry of Default and for Default Judgment, (Dkt. #30), Motion for Temporary Restraining Order and Preliminary Injunction, (Dkt. #33), and Supplemental Brief Regarding Preliminary and Permanent Injunction, (Dkt. #38). The Court held a hearing on the injunction motion on March 7, 2023. (Dkt. #37).

Because Defendant Medulla International, LLC d/b/a Tastebuddy, LLC ("Tastebuddy") is a limited liability company, it cannot proceed pro se in federal court. *Donovan v. Rd. Rangers Country Junction, Inc.*, 736 F.2d 1004, 1005 (5th Cir. 1984) (per curiam); *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (per curiam). Yet, despite instructions from the Court to hire counsel, (Dkt. #27), Tastebuddy has failed to do so. Accordingly, to date, only TenPearls, LLC ("TenPearls") has appeared in this case. Having considered the motions, the record, and the applicable law, the Court concludes that the default judgment motions should be **GRANTED**, and the TRO/preliminary injunction motion, which requests a permanent injunction against Tastebuddy as well as temporary relief, should be **GRANTED in part**.

# I. BACKGROUND

## A. Factual Background

In April 2021, TenPearls—an "application development company" that provides businesses with various "technology solutions"—entered into a Professional Services Agreement ("PSA") with Tastebuddy—an online company that "helps buyers and sellers of food items . . . connect and sell/purchase items for shipping and delivery." (Dkt. #6 at 2–3 ¶¶ 6–7); (Dkt. #33-1 at 2 ¶ 3(a)). Under the PSA, TenPearls was to provide Tastebuddy with its technology solutions and receive payment in return. (Dkt. #33-1). In relevant part, the PSA states:

> No right or license shall be granted or conveyed by 10Pearls to Client with respect to Deliverables created under any applicable [Statement of Work], Additional Statement of Work, and/or Impact Statement *except when such payment obligation has been performed*.

(Dkt. #33-1 at 8 ¶ 7(b)) (emphasis added).

Over the course of six months, from November 2021 to April 2022, TenPearls provided Tastebuddy with its technology solutions and issued monthly invoices for those services totaling $261,393.42.[1] (Dkt. #33 at 2 ¶ 3). Under the PSA, Tastebuddy was to pay TenPearls "no later than thirty (30) days after [the] date of [each] invoice." (Dkt. #33-1 at 6 ¶ 3). TenPearls alleges that Tastebuddy violated the PSA by failing to pay this balance within "30 days after the payment due date." (Dkt. #33 at 2–3 ¶ 5). As a result, TenPearls assessed a 1.5% monthly interest rate pursuant to the

---

[1] Tastebuddy's $40,000.00 deposit reduced this balance to $221,393.42. (Dkt. #33 at 2 ¶ 4).

PSA—amounting to $8,736.99 of interest charges. (Dkt. #33 at 2–3 ¶ 5); *see also* (Dkt. #33-1 at 6 ¶ 3).

While Tastebuddy indicated that it would remit the outstanding balance by March 11, 2022, no payments were made by that date. (Dkt. #33-2 at 2–3). TenPearls subsequently terminated the PSA and demanded that Tastebuddy remit payments for the $230,130.41 due, comprised of the $221,393.42 balance for its technology solutions plus $8,736.99 of interest charges. (Dkt. #34, #34-1). To date, Tastebuddy has not satisfied the outstanding balance. (Dkt. #33-1 at 3 ¶ 4).

TenPearls initiated the instant lawsuit in June 2022, in which it seeks (1) damages in the amount of $230,130.41, (2) a preliminary and permanent injunction barring Tastebuddy from using its intellectual property rights and licenses previously granted to Tastebuddy, (3) prejudgment and postjudgment interest, (4) its litigation costs, and (5) its attorney's fees. (Dkt. #6 at 8–9); (Dkt. #25 at 5); (Dkt. #33 at 5).

## B. Procedural Background

This case has an unusual procedural history. Two weeks after suit was filed, Tastebuddy accepted service via personal delivery, through its registered agent Christen Medulla. (Dkt. #8). Tastebuddy then filed an Application for Extension of Time to Answer Complaint so that it could "locate suitable representation." (Dkt. #9).[2] Yet, no counsel appeared on behalf of Tastebuddy, as is required for a limited liability company to proceed in federal court.

---

[2] This motion was stricken, given that "the motion was improperly filed by a limited liability company proceeding pro se." (Dkt. #10 at 1).

After Tastebuddy failed to timely answer the lawsuit, TenPearls filed a Motion for Entry of Default and for Default Judgment, (Dkt. #11), and a Motion for Temporary Restraining Order and Preliminary Injunction, (Dkt. #12). As noted in the certificates of service, both motions were served only electronically and were not served by personal delivery or certified mail.

About two weeks after TenPearls's motions were filed, Tastebuddy—still without counsel—filed a Motion for Appointment of Counsel. (Dkt. #15). On October 12, 2022, the Court issued an order denying Tastebuddy's motion and ordering Tastebuddy to obtain counsel by no later than November 2, 2022, or risk subjecting itself to default. (Dkt. #18). After no counsel appeared on behalf of Tastebuddy by November 2, the Court issued another order on November 30, 2022, instructing TenPearls to move for default or risk dismissal of its claims for want of prosecution. (Dkt. #19). TenPearls subsequently filed its Request for Clerk of Court's Entry of Default and for Default Judgment. (Dkt. #20). This filing, as with TenPearls's previous filings, was served electronically, but not through personal delivery or mail service. The Clerk subsequently filed its entry of default. (Dkt. #21).

The Court became aware that the Clerk's Office had failed to send several orders to Tastebuddy's agent through certified mail, as was required since Tastebuddy is unrepresented and thus does not receive electronic notifications that are filed on the docket. Among the orders Tastebuddy failed to receive were the Court's October 12 order denying Defendant's Motion for Appointment of Counsel, (Dkt. #18), and its November 30 order instructing TenPearls to move for default or

4

risk dismissal of its claims for want of prosecution, (Dkt. #19). The Clerk's Office also failed to notify Tastebuddy's agent through certified mail of the Clerk's entry of default. (Dkt. #21). The Court also became aware that TenPearls's Motion for Entry of Default and for Default Judgment, (Dkt. #11), Motion for Temporary Restraining Order and Preliminary Injunction, (Dkt. #12), and Request for Clerk of Court's Entry of Default and for Default Judgment, (Dkt. #20), were not served on Tastebuddy by personal delivery or certified mail.

Because Tastebuddy was not placed on notice of the Court's orders and TenPearls's filings, the Court vacated its previous orders, (Dkt. #18, #19), vacated the Clerk's entry of default, (Dkt. #21), and struck TenPearls's filings. (Dkt. #11, #12, #20). (Dkt. #26). The Court then issued an amended order again denying Tastebuddy's Motion for Appointment of Counsel, in which Tastebuddy was given a new deadline to obtain counsel.[3] (Dkt. #27). Tastebuddy, again, failed to meet that deadline.

TenPearls then properly filed and served its Motion for Entry of Default and for Default Judgment, (Dkt. #30), and the Clerk entered its entry of default, (Dkt. #31). TenPearls also refiled and properly served its Motion for Temporary Restraining Order and Preliminary Injunction. (Dkt. #33). The Court held a hearing on the TRO/preliminary injunction motion, in which only TenPearls participated, given Tastebuddy's failure to appear in the case. (Dkt. #37). After the hearing,

---

[3] While Tastebuddy then filed a second motion for appointment of counsel, (Dkt. #28), the Court struck that motion as redundant of an already-denied request. (Dkt. #29).

5

TenPearls submitted a Supplemental Brief Regarding Preliminary and Permanent Injunction. (Dkt. #38). To date, no counsel has appeared in this case on behalf of Tastebuddy.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth certain conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment. FED. R. CIV. P. 55. The Fifth Circuit requires a three-step process for securing a default judgment. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. FED. R. CIV. P. 55(a); *New York Life*, 84 F.3d at 141. Second, an entry of default may be entered by the clerk when the default is established. FED. R. CIV. P. 55(a); *New York Life*, 84 F.3d at 141. Third, after an entry of default, a plaintiff may apply to the clerk or the court for a default judgment. FED. R. CIV. P. 55(b); *New York Life*, 84 F.3d at 141.

Rule 55(b)(2) grants a district court "wide latitude," and the entry of default judgment is left to the sound discretion of the trial court. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *see also Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). A defendant, by its default, admits a plaintiff's well pleaded allegations of fact, *Nishimatsu Constr. Co. v. Hous. Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975), although a default does not automatically establish the validity of the complaint's claimed damages, *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002).

### III. DISCUSSION

In determining whether to enter a default judgment, courts utilize a three-part analysis: (1) "whether the entry of default judgment is procedurally warranted"; (2) "whether a sufficient basis in the pleadings based on the substantive merits for judgment exists"; and (3) "what form of relief, if any, a plaintiff should receive." *Graham v. Coconut LLC*, No. 4:16-CV-606, 2017 WL 2600318, at *1 (E.D. Tex. June 15, 2017) (citing, among others, *Lindsey*, 161 F.3d at 893). The Court addresses each issue in turn.

### A. Default Judgment Is Procedurally Warranted

The Court must first consider whether the entry of default judgment is procedurally warranted. *Lindsey*, 161 F.3d at 893. Relevant factors in making this determination include:

> [1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id.*

On balance, these factors weigh in favor of granting default judgment against Tastebuddy. When a defendant defaults, it admits to the plaintiff's well-pleaded allegations of fact, so there are no material issues of fact in dispute. *Nishimatsu*, 515 F.2d at 1206. TenPearls's interests are prejudiced because Tastebuddy has failed to hire counsel to represent itself—as required for a limited liability company to proceed in federal court—bringing the adversarial process to a halt. *See United*

*States v. Fincanon*, No. 7:08-CV-61, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (citing *Lindsey*, 161 F.3d at 893). Initially, Tastebuddy acknowledged service of the complaint through its registered agent Christen Medulla, (Dkt. #8), and requested additional time to obtain counsel. (Dkt. #9). The Court also denied Tastebuddy's multiple requests for appointment of counsel, (Dkt. #15, #28), and repeatedly directed Tastebuddy to hire its own counsel. (Dkt. #18, #27, #29). But to date, over ten months after the initiation of this lawsuit, Tastebuddy still has not obtained counsel. The grounds for default are clearly established, and a default judgment is not unusually harsh.

As to the remaining factors, no evidence of mistake or excusable neglect exists. Nor does there appear to be any basis on which the Court would be obligated to set aside the default. *See Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (describing the equitable principles a district court evaluates when considering whether good cause exists to set aside a default, including "whether the default was willful, whether setting it aside would prejudice the adversary, [] whether a meritorious defense is presented," and whether "the defendant acted expeditiously to correct the default" (cleaned up)). For these reasons, the entry of default judgment is procedurally appropriate here.

**B. Sufficient Basis in the Pleadings to Enter Default Judgment**

The Court must next consider whether TenPearls's complaint provides a sufficient factual basis to enter default judgment. *See Nishimatsu*, 515 F.2d at 1206 ("[A] defendant's default does not in itself warrant the court in entering a default judgment."). In determining whether there is a sufficient basis in the pleadings for

8

judgment, courts in the Fifth Circuit "draw meaning from the case law on Rule 8." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). Factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The complaint must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but "detailed factual allegations" are not required.[4] *Id.* (cleaned up) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

Applying this standard, the Court now considers the sufficiency of TenPearl's claims for breach of contract and injunctive relief.[5]

### i. Breach of Contract

First, TenPearls seeks default judgment on its breach-of-contract claim against Tastebuddy. (Dkt. #6 ¶¶ 18–21). To succeed on a breach-of-contract claim under Texas law, a plaintiff must establish: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages

---

[4] To be clear, this low threshold is less rigorous than the plausibility standard under Rule 12(b)(6). *Wooten*, 788 F.3d at 498 n.3 (declining "to import Rule 12 standards into the default-judgment context" because "a default is the product of a defendant's *inaction*" rather than the invocation of Rule 12's defense).

[5] Because the Court finds the existence of a valid contract, it need not assess TenPearls's claim for unjust enrichment/quantum meruit, which is an alternative theory of liability under Texas law. *See Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App.—Texarkana 1996), *aff'd sub nom.*, *Sw. Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467 (Tex. 1998) ("The unjust enrichment doctrine applies the principles of restitution to disputes which for one reason or another *are not governed by a contract between the contending parties*.") (emphasis added).

resulting from the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).

In its amended complaint, TenPearls pleads facts sufficient to state a claim for breach of contract under Texas law. First, TenPearls pleads the existence of a valid contract in which TenPearls would provide Tastebuddy with its technology solutions in return for payment. (Dkt. #6 at 2–4 ¶¶ 7–10). As to performance, TenPearls pleads that it provided Tastebuddy with its technology solutions. (Dkt. #6 at 5 ¶ 19) ("Plaintiff TenPearls has complied fully with all of its obligations under the PSA."). Next, TenPearls alleges that Tastebuddy breached the contract by failing to make payments—including interest charges for late payments—for the services provided. (Dkt. #6 at 5 ¶ 20). Finally, TenPearls has alleged that it suffered damages from Tastebuddy's failure to pay for the services provided. (Dkt. #6 at 5–6 ¶ 21).

Based on the well-pleaded allegations, TenPearls has established each element of its claim for breach of contract against Tastebuddy. TenPearls is therefore entitled to default judgment against Tastebuddy for breach of contract.

### ii. Injunctive Relief

Next, TenPearls seeks a permanent injunction barring Tastebuddy from further use of its technology solutions—i.e., its intellectual property. (Dkt. #6 at 6–8 ¶¶ 26–33). "A federal court sitting in diversity applies the federal standard to determine if injunctive relief should be granted." *Bruckner Truck Sales, Inc. v. Bayou Diesel Servs., LLC*, No. 2:17-CV-0204, 2017 WL 10152283, at *4 (N.D. Tex. Nov. 21, 2017), *report and recommendation adopted*, 2018 WL 4076478 (N.D. Tex. Jan. 5, 2018) (citing *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004);

*Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004); *TransPerfect Translations, Inc. v. Leslie*, 594 F.Supp.2d 742, 748 (S.D. Tex. 2009)). Under those federal standards, "[a] party seeking a permanent injunction must show: (1) that it has succeeded on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021) (citation omitted). Notably, a permanent injunction is appropriate only if a "defendant's past conduct gives rise to an inference that, in light of present circumstances, there is a reasonable likelihood of future transgressions." *SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 784 (5th Cir. 2017) (quotations omitted). TenPearls has alleged facts that satisfy each of these factors.

First, TenPearls has succeeded on the merits of its breach-of-contract claim. *See supra* Part III.B.i. Second, TenPearls has alleged that it will suffer irreparable harm without an injunction because (1) Tastebuddy is insolvent and will likely be unable to satisfy any money judgment, and (2) Tastebuddy has unlawfully maintained control of TenPearls's intellectual property without a license. (Dkt. #38 at 3–7) (alleging that "Tastebuddy has even shown [TenPearls's] code to one of [TenPearls's] competitors" and attaching evidence of the same). Indeed, the Fifth Circuit has held that a defendant's inability to satisfy a money judgment is grounds for finding irreparable harm to a plaintiff. *Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F.App'x 259, 273 (5th Cir. 2014) (holding that the district court did not err in

finding a "substantial probability that [plaintiff would] be unable to collect a judgment against [defendant] in light of [defendant's] initiation of bankruptcy proceedings" (quotations omitted)). Third, TenPearls has alleged that the injury it suffers if an injunction is not issued greatly outweighs any harm to Tastebuddy if an injunction is issued. Indeed, if an injunction is not issued, TenPearls will be harmed by Tastebuddy's continued unlawful use its intellectual property (and possible revelation of this intellectual property to TenPearls's competitors), while if an injunction is issued, Tastebuddy will suffer no harm, as it has no legal right to TenPearls's intellectual property. (Dkt. #38 at 7–8). Finally, the Fifth Circuit has made clear that it is in the public interest to uphold contracts. *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 203 (5th Cir. 1984) (noting the existence of "the strong public interest . . . in enforcing contracts," which is achieved by "enforcing contract terms as they were intended by the parties").[6]

For these reasons, the Court finds that TenPearls is entitled to default judgment on its request for a permanent injunction.[7]

---

[6] The Court notes that TenPearls's repeated failure to pay Tastebuddy for services rendered supports the need for an injunction barring Tastebuddy from further use of TenPearls's intellectual property. *See Life Partners Holdings*, 854 F.3d at 784.

[7] Because the Court is issuing a permanent injunction, it need not assess TenPearls's argument for a preliminary injunction.

\* \* \*

For the foregoing reasons, the Court grants TenPearls's motion for default judgment against Tastebuddy as to its breach-of-contract claim and request for a permanent injunction.

## C. Appropriateness of Relief

The Court next considers whether TenPearls is entitled to the damages it seeks for its breach-of-contract claim. In the context of a default judgment, damages are normally not awarded without an evidentiary hearing. *James*, 6 F.3d at 310. But this general rule in favor of hearings does not apply when the amount of damages can be determined with a mathematical calculation by reference to the pleadings and supporting documents. *Id.* Courts in this circuit routinely find that copies of contracts, purchase orders, invoices, and statements of projected costs, together with computations and affidavits, are a sufficient evidentiary basis for a damages award in the absence of a hearing. *See, e.g.*, *Crown Distrib. LLC v. Ice Suppz, LLC*, No. 3:21-CV-1052-B, 2022 WL 1524119, at \*6 (N.D. Tex. May 13, 2022).

### i. Damages

TenPearls seeks $230,130.41 in damages, which includes $221,393.42 for its technology solutions services plus $8,736.99 of interest charges. (Dkt. #34, #34-1). These claims are readily supported by the business records TenPearls has submitted to the Court. TenPearls issued six invoices to Tastebuddy between October 2021 and March 2022, broken down as follows: $59,378.00 for October 31, 2021, (Dkt. #33-1 at 15); $59,378.00 for November 30, 2021, (Dkt. #33-1 at 16); $59,378.00 for December 31, 2021, (Dkt. #33-1 at 17); $48,064.00 for January 31, 2022, (Dkt. #33-1 at 18);

$23,214.00 for February 28, 2022, (Dkt. #33-1 at 19); and $11,981.42 for March 31, 2022, (Dkt. #33-1 at 20). When added together, these six invoices total $261,393.42. However, TenPearls notes that this balance was reduced by Tastebuddy's $40,000.00 deposit, bringing the total owed to $221,393.42. (Dkt. #6 at 4 ¶ 12); (Dkt. #33 at 2 ¶ 4).

The PSA states that "[a]ny amount due under this Agreement which is not paid within thirty (30) days after the payment due date shall bear interest from the payment due date to the date of payment at one and one half percent (1.5 %) per month." (Dkt. #33-1 at 6 ¶ 3). Because the invoices were not paid within 30 days after they were due (indeed, they have not been paid at all), TenPearls assessed non-compounding interest charges of $8,736.99 broken down as follows—$3,562.68 for the October 2021 invoice (bearing four months of simple interest), $2,672.01 for the November 2021 invoice (bearing three months of simple interest), $1,781.34 for the December 2021 invoice (bearing two months of simple interest), and $720.96 for the January 2022 invoice (bearing one month of simple interest). (Dkt. #6 at 4 ¶ 13); (Dkt. #33 at 2–3 ¶ 5); (Dkt. #34-1 at 1). The interest charges have been calculated as of March 2022, (Dkt. #34-1 at 1), and these charges are squarely permitted by the parties' contract.[8] Adding the $8,736.99 interest to the $221,393.42 brings the total amount due to $230.130.41, which is the precise amount requested by TenPearls.

---

[8] Curiously, it has been left unexplained why TenPearls has stopped charging Tastebuddy with continued accrued interest throughout the pendency of this suit. The apparent ongoing nature of Tastebuddy's interest liability to TenPearls notwithstanding, the Court will consider only those amounts sought by TenPearls by way of its motions and papers submitted to the Court in connection with this matter.

Accordingly, because the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, the Court grants TenPearls's motion for default judgment as to its request for damages.

### ii. Prejudgment interest

TenPearls seeks prejudgment interest at the maximum rate permitted by law. (Dkt. #6 at 9); (Dkt. #33 at 5). When, as here, the parties' contract does not specify a prejudgment interest rate, the Court must look to the availability of prejudgment interest under Texas law. Under Texas law, "[t]here are two legal sources for an award of prejudgment interest: (1) general principles of equity and (2) an enabling statute." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998). Because breach-of-contract claims do not fall within Texas enabling statutes, the "prejudgment interest award is governed by Texas common law." *Int'l Turbine Services, Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 499–500 (5th Cir. 2002) (citing *Kenneco*, 962 S.W.2d at 530; *Adams v. H & H Meat Products, Inc.*, 41 S.W.3d 762, 768 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.)). And under Texas common law, "prejudgment interest accrues at the rate for postjudgment interest [under the Texas Finance Code] and [is] computed as simple interest." *Kenneco*, 962 S.W.2d at 532.

Pursuant to Section 304.003 of the Texas Finance Code, which governs postjudgment interest rates, the applicable interest rate is the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation, unless that rate is less than five percent or more than fifteen percent.

15

TEX. FIN. CODE § 304.003(c). If the Federal Reserve System rate is less than five percent, the applicable interest rate is rounded up to five percent. *Id.* The prime rate currently is 4.83%. Accordingly, because that rate is less than 5.00%, the Court will apply a 5.00% prejudgment interest rate.

Next, the Court must determine the date on which TenPearls began accruing prejudgment interest. Under Texas law, prejudgment interest begins to accrue on the earlier of 180 days after the date on which a defendant receives written notice of a claim or the date the suit is filed. *Kenneco*, 962 S.W.2d at 531; TEX. FIN. CODE § 304.104. TenPearls sent a letter to Tastebuddy on March 24, 2022, requesting that Tastebuddy remit $230,130.41 it owed. (Dkt. #34-1). As that letter placed Tastebuddy on notice of the claim, the Court calculates prejudgment interest computed as simple interest from May 24, 2022, to the day preceding the date of judgment. *See* TEX. FIN. CODE § 304.104.

### iii. Postjudgment interest

Federal law governs the postjudgment interest rate. *Meaux Surface Prot.* 607 F.3d at 173. The federal postjudgment interest rate is governed by 28 U.S.C. § 1961(a), which sets the rate at the weekly average one-year constant maturity Treasury yield for the calendar week preceding the date of judgment. For the week ending April 28, 2023, the federal postjudgment interest rate was 4.72%.[9] Therefore, the Court awards postjudgment interest on all amounts awarded to TenPearls at a rate of 4.72% from the date of the entry of the Final Judgment.

---

[9] This rate's effective date is May 1, 2023, through May 7, 2023.

### iv. Costs

TenPearls next requests costs. (Dkt. #6 at 9); (Dkt. #33 at 5). Pursuant to Federal Rule of Civil Procedure 54(d)(1), a prevailing party in a civil action is entitled to recover its costs unless a federal statute, the federal rules, or the Court provides otherwise. As such, TenPearls is entitled to costs in this action. TenPearls has not specified the nature or amount of the costs it seeks. TenPearls also did not submit a bill of costs. Accordingly, TenPearls may submit a request for costs in a post-judgment motion pursuant to Federal Rule of Civil Procedure 54(d). *See Moody Nat. Bank of Galveston v. GE Life & Annuity Assur. Co.*, 383 F.3d 249, 250 (5th Cir. 2004) (citing FED. R. CIV. P 54(d)) ("Motions addressing costs and attorney's fees . . . are generally made pursuant to Rule 54 [and] are considered collateral to the judgment."); *Coward v. AC & S., Inc.*, 91 F.App'x 919, 922 (5th Cir. 2004) (citing *Cooter v. Hartmarx Corp.*, 496 U.S. 384, 396, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)) (noting that "a court retains jurisdiction over collateral matters post-divestiture of jurisdiction on the merits"); *see also Cobb v. Kendall*, No. 3:22-CV-1867-B-BH, 2022 WL 7213668, at *1 (N.D. Tex. Sept. 23, 2022), *report and recommendation adopted*, 2022 WL 7035120 (N.D. Tex. Oct. 12, 2022) (collecting cases).

### v. Attorney's fees

Finally, TenPearls requests its attorney's fees. (Dkt. #6 at 9); (Dkt. #33 at 5). An attorney's fee award "is governed by the same law that serves as the rule of decision for substantive issues in the case." *Chevron USA, Inc. v. Aker Mar. Inc.*, 689 F.3d 497, 505 (5th Cir. 2012) (citing *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002)). "State law controls both the award of and the reasonableness of fees

17

awarded where state law supplies the rule of decision." *Mathis*, 302 F.3d at 461. Because Texas law governs the underlying claims here, Texas law likewise governs TenPearls's request for attorney's fees. Under Texas law, a prevailing party in a civil action may recover attorney's fees in a claim for an oral or written contract. TEX. CIV. PRAC. & REM. CODE § 38.001(b)(8). TenPearls has not specified the nature or amount of the attorney's fees it seeks. Because the Texas Supreme Court would likely hold that attorney's fees do not constitute an element of a breach-of-contract claim under Texas law, TenPearls may submit a request for attorney's fees in a post-judgment motion pursuant to Federal Rule of Civil Procedure 54(d). *See Vianet Grp. PLC v. Tap Acquisition*, No. 3:14-CV-3601-B, 2016 WL 4368302, at *9 (N.D. Tex. Aug. 16, 2016) (reasoning that the Texas Supreme Court would not characterize attorney's fees as damages "if they were subsequently incurred prosecuting a breach of contract claim"); *Brinkley v. PennyMac Loan Servs., LLC*, No. 3:18-CV-383-G-BN, 2018 WL 6004309, at *11 (N.D. Tex. Oct. 22, 2018), *report and recommendation adopted*, 2018 WL 5995444 (N.D. Tex. Nov. 15, 2018) (citing *Vianet* for same proposition).

## IV. CONCLUSION

For the foregoing reasons, TenPearls's Motion for Rendition of Default Judgment, (Dkt. #25), and Motion for Entry of Default and for Default Judgment, (Dkt. #30), are **GRANTED**.

It is further **ORDERED** that TenPearls's Motion for Temporary Restraining Order and Preliminary Injunction, which requests a permanent injunction against Tastebuddy as well as temporary relief, (Dkt. #33), is **GRANTED in part**. Specifically, the Court will grant a permanent injunction against Tastebuddy.

TenPearls's requests for a temporary restraining order and a preliminary injunction are **DENIED as moot**.

It is further **ORDERED** that, effective immediately, Defendant Medulla International, LLC, d/b/a Tastebuddy, LLC and all of its affiliates, subsidiaries, officers, directors, shareholders, and employees, or those in active concert with it, are hereby **PERMANENTLY ENJOINED** from further use of the "Tastebuddy" platform as developed by TenPearls, including the web portal, both ios and android applications for buyers and sellers, and any related databases, digital files, software, code, or printouts or images of the same (the "Intellectual Property") except as may be necessary for the enforcement of this Order. The aforementioned Intellectual Property shall be removed from any public viewing or usage, and the Intellectual Property may not be viewed or utilized by the public or by any third parties except as such may be necessary for enforcement of this Order, or as utilized by TenPearls. The Intellectual Property shall not be destroyed during the pendency of this lawsuit and enforcement of any resulting orders or judgments.

The Court will enter its final judgment by separate order.

**So ORDERED and SIGNED this 5th day of May, 2023.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE